The opinion of the Court was delivered by
WhitNER, J.
The defendant in these cases claims to have acted in the double capacity of carrier and warehouseman, and herein to have completed the contract for carriage.
It is well understood that a material distinction exists as to the extent of liability according to the character of the bailee, and though the services may be rendered by the same person or company, the contracts should not be confounded. This distinction, where loss occurs, often involves matter of great nicety. The question of delivery as between different persons has its perplexities and these are greatly increased in the class of cases now under consideration. Hence mainly the wide range of the argument, and though fve acknowledge the learning and research which have been brought to our aid, it is not perceived that the force of authority could be given, by any solution, if attempted, to some of the questions discussed.
The duration of the carrier’s strict liability after the period of arrival at the place of destination, the implied obligation of notice to the consignee in some form or other, or matter of excuse for such default, the thing to be done before a change of responsibility attaches with the general policy which should permit or forbid what is claimed or denied, it *340 is conceded are grave questions deserving careful examination. The large amount of goods carried by railroads, the peculiar circumstances attending their shipment, the various points of destination and hours of arrival by day and night, and remoteness of the consignee or owner from the line or terminus of the road, all combine to make it convenient and necessary as well for the railroad companies, as for the owners of goods, that well defined rules be adopted discharging the carrier from his extraordinary liability as insurer, when the reason no longer exists, and yet holding him to a just measure of responsibility for the protection of the owner, according to the circumstances.
In this case it is said the company had performed their service according to their contract, that they had transported the goods in safety and unloaded them from the cars at the place of destination, and though loss subsequently occurred, the defendant was not liable as carrier. This was conceded by the circuit judge with the single qualification that “if the unloading was delayed unnecessarily, and the loss thereby resulted, that then the company might be liable.” Though the verdict was against the compaay, yet the grounds of appeal suggest no objection to this instruction, and it is manifest that the case did not in anywise turn on this question.— The defendant was remitted to the more favorable position of a warehouseman, and held to such care as a prudent man would take of his own goods. Thé point presented in the ground of appeal is, 11 That as warehousemen the defendants were only liable for neglect, but no neglect was proved; and so the verdict was without evidence and contrary to the law as delivered by the judge.”
The appellant relies on the general doctrine that when a party is bound to ordinary care before he is made chargeable there must be evidence of neglect or want of care.
In Story on Bail. Sec. 454, it is said “ In respect to depositories for hire there seems to be some discrepancies in the *341 authorities whether the onus probandi of negligence lies on the plaintiff or of exculpation on the defendant in a suit brought for the loss.” The weight of authority, the eminent writer concludes, is in favor of the former rule, and it is not proposed now to controvert this position. Text writers and judges all agree however, that negligence and diligence' are not to be defined by rules of evidence. What should be deemed reasonable care in any case must depend on the peculiar circumstances of that particular case. Precautions which might be deemed reasonable in some circumstances, might not be so in others. Illustrations readily suggest themselves and certainly need not be stated.
In this case the goods were lost, and defendant having shown the loss to have been occasioned by fire, insists that this fact was sufficient to discharge from liability, unless plaintiff should show by direct proof that the fire was the result of negligence. On the contrary, the presiding judge in his instructions said, “it was right to require the company to show how the fire occurred; in the absence of such proof it might be that the jury would think them liable.” The question of negligence was of course submitted to the jury, the facts were before them, the circumstances were peculiar, the suggestion was appropriate, and the presump-i tion was fair and legitimate. That was a liberal concession to the defendant, which held that the custody as carrier had ceased by turning off the cotton from the car to the platform, and that the skids in the yard of the company alongside the track as a place of deposit, entitled to the character and analogies of a warehouse.
Though it may be well claimed that the terms of the contract dispensed with a personal delivery, some future case may settle the question raised in the argument, whether it also dispensed with notice of arrival.
This quasi warehouse at least as a place of deposit, did not afford the ordinary security to the owners of goods, *342 and if by sncb delivery it be beld that the custody is changed, it is no hard measure to require a diligence commensurable with the particular risk still - to be incurred. Again, it is manifest that under such circumstances, care should be taken that the bailor is not placed entirely at the mercy of the bailee, when loss ensues.
The omission to prove, what a party should at all times be prepared to establish, may well raise a presumption often against him.
The place where this loss occurred was in the yard of the company, and surrounded by their employees, who were at all times under their control and within their knowledge. Such witnesses would generally be unknown to the owners or consignees, and but little disposed to implicate themselves in a charge of negligence. In reference to such an inquiry as the one on foot in this case, ordinarily proof by one of the parties, would be easy and proper, by the other impracticable and uncertain. Hence the rules to be found in our -books under such circumstances. In this State the rule on the subject of limiting the liability of a carrier has been relaxed though the onus still rests to bring himself within the exceptions and to discharge himself of negligence. Swindler vs. Hillard & Brooks, 2 Rich. 303; Singleton vs. Hillard & Brooks, 1 Strob. 214. So too in case of loss by the killing of cattle, aprima facie case is made by the killing, which devolves on the company the onus of explanation or excuse.
The standard of diligence in such a case as this would imply the presence of employees acting as watchmen or otherwise, who should be able to speak, and silence of defendant became an element in the inquiry.
The motion for a new trial is dismissed.
O’Neall, Wardlaw, Withers and Munro, JJ., concurred.

Motion dismissed.